**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Crystal Lovelady,<br><br>    Plaintiff,<br><br>v.<br><br>General Business Recoveries Incorporated, et al.,<br><br>    Defendants. | No. CV-23-00136-TUC-AMM<br><br>**ORDER** |

Pending before the Court is Plaintiff Crystal Lovelady's Motion for Partial Summary Judgment and Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment. (Docs. 45, 47.) The motions are fully briefed. (Docs. 52, 54, 61–62.) The parties submitted Statements of Facts pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(a)–(b). (Docs. 46, 48, 53, 55.) Defendant requested oral argument, which the Court held on February 6, 2025. For the following reasons, the Court will deny Plaintiff's Motion for Partial Summary Judgment and will grant Defendant's Motion for Summary Judgment.

On March 22, 2023, Plaintiff Crystal Lovelady ("Plaintiff" or "Ms. Lovelady") sued Experian Information Solutions, Inc. ("Experian") and General Business Recoveries Incorporated ("GBR") alleging violations of the Fair Credit Reporting Act ("FCRA") and Fair Debt Collections Practices Act ("FDCPA").[1] (Doc. 1.)

In Count I, Plaintiff alleges Experian violated the FCRA, 15 U.S.C. § 1681e(b), by

---

[1] Plaintiff stipulated to the dismissal of GBR on November 20, 2023. (Docs. 33–34.)

willfully failing to follow reasonable procedures to ensure the accuracy of Plaintiff's consumer report. (Doc. 1 at 12–13.) In Count II, Plaintiff alleges Experian failed to conduct a "reasonable reinvestigation" when Plaintiff disputed the allegedly inaccurate information in violation of the FCRA, 15 U.S.C. § 1681i. (*Id.* at 13–14.) Plaintiff seeks statutory and punitive damages pursuant to 15 U.S.C. §§ 1681n and 1681o. (*Id.* at 12–14.)

### I. Factual Background

Ms. Lovelady married Joshua Lovelady ("Mr. Lovelady") in 2019 and together they live in Sahuarita, Arizona. (Deposition of Crystal Lovelady "DCL" at 7:16, 14:1–8.) On April 28, 2021, Mr. Lovelady underwent a root canal at Southern AZ Endodontics ("Southern"). (Experian's Statement of Facts "ESOF" ¶ 2.) Before the visit, Mr. Lovelady signed Southern's "Patient Registration Form," taking financial responsibility for fees incurred at the time of service. (Doc. 48 at 182–83.) Mr. Lovelady listed Plaintiff as his spouse and emergency contact on the registration form. (*See* Plaintiff's Statement of Facts "PSOF" ¶ 6.) While Plaintiff initially alleged that neither she, nor her husband, had been to Southern (Doc. 1 at 9), Plaintiff concedes she later learned that her husband received the dental care in question (PSOF ¶ 5; DCL at 136:12–24).

Mr. Lovelady paid Southern $100.00 on the date of the root canal, and he signed a "promise to pay" Southern $277.00 by May 28, 2021. (Doc. 48 at 184–85.) Plaintiff testified that the signatures on the registration form and promissory note are her husband's. (PSOF ¶ 6; DCL at 136:12–137:15.) However, Mr. Lovelady did not pay the remaining $431.58 balance to Southern. (*See* Doc. 48 at 185.)

Around March 31, 2022, Southern sent the $431.58 due on Mr. Lovelady's account to GBR, a debt collection agency.[2] (ESOF ¶ 6; *see* Doc. 48 at 185.) Around May 2022, GBR reported the approximately $437.00[3] collections account to Experian, a consumer reporting agency ("CRA").[4] (ESOF ¶ 7; Doc. 48 at 179.) Experian then added the GBR

---

[2] GBR asserts it did not receive Mr. Lovelady's account from Southern until on or about April 12, 2022. (Doc. 48 at 179–81.)
[3] The parties did not address why GBR reported the original $431.58 balance as $437.00 to Experian. However, Plaintiff does not challenge the amount's accuracy.
[4] Under the FCRA, a "consumer reporting agency" is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the

debt for dental care to Plaintiff's credit file and listed the account with the "responsibility" field marked as a "joint account" with Mr. Lovelady. (*See* ESOF ¶ 8; PSOF ¶ 2; Doc. 46 at 115.)

On May 17, 2022, Plaintiff received an email from Experian alerting her that the $437.00 GBR collections account was being reported on her consumer report with Southern listed as the original creditor.[5] (*See* PSOF ¶¶ 1–2; DCL at 25:11–27:17; Doc. 48 at 9.) At that time, Plaintiff did not know about the debt because she had never visited Southern. (PSOF ¶ 3.) Believing the charge from Southern to be fraudulent, Plaintiff contacted Southern who confirmed that Plaintiff was not listed in its system. (PSOF ¶ 3; DCL at 27:2–13.) Plaintiff then contacted GBR and was informed that the collections account was debt incurred from her husband's dental care and that she was jointly responsible for the debt because Arizona is "a community [property] state." (ESOF ¶ 9; PSOF ¶ 8; DCL at 27:16–28:12.)

On June 27, 2022, Plaintiff sent a letter to GBR advising that she and Mr. Lovelady "are not going to pay this account." (ESOF ¶ 10; Doc. 48 at 231.) On August 24, 2022, Plaintiff mailed a dispute letter to Experian asserting that the GBR account does not belong to her and requesting it be removed from her credit report.[6] (PSOF ¶ 7; ESOF ¶¶ 11–13.) Experian received Plaintiff's dispute letter on September 7, 2022; Plaintiff did not attach any documents to the letter regarding the GBR account. (ESOF ¶¶ 11–13.)

In response to Plaintiff's dispute letter, Experian contacted GBR via an "Automated Consumer Dispute Verification" ("ACDV"). (*Id.* ¶ 14.) The ACDV summarized Plaintiff's dispute and provided GBR with Plaintiff's dispute letter and account information. (*Id.*) GBR responded to Experian's verification request on September 29, 2022 and "verif[ied]

---

practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).
[5] The consumer report showed the collections account was opened on April 12, 2022, with an account number starting with D788. (PSOF ¶ 1.)
[6] Plaintiff asserts that she also mailed the dispute letter to non-party Trans Union, a CRA, which removed the GBR account from Plaintiff's Trans Union consumer report by October 2022. (PSOF ¶¶ 7, 10.)

that Plaintiff was responsible for the account." (*Id.* ¶ 15.) The ACDV reflects that the GBR collections account was reported in Experian's system with an "ECOA Code 2" ("Code 2"). (Doc. 46 at 80.) "Code 2" describes a "Joint Contractual Liability," meaning "[t]his consumer has a contractual responsibility for this joint account."[7] (Doc. 53 at 13.)

Experian sent Plaintiff the results of its "reinvestigation" on September 29, 2022, communicating that GBR "certified to Experian that the information is accurate." (*Id.* ¶ 16.) Experian outlined actions Plaintiff could take if she disagreed with the results, such as providing Experian with additional documentation or adding a statement of dispute explaining her position. (*Id.* ¶ 18.) While Plaintiff received the results and advised Experian that she could provide additional information, she failed to do so. (*Id.* ¶ 19.) Experian did not remove the GBR account from Plaintiff's consumer report, and the "responsibility" field remained listed as a "joint account." (*Id.* ¶ 17; PSOF ¶ 9.)

In August 2022, Plaintiff applied for credit but was denied by Bank of America, USAA, Capital One, and Chase.[8] (PSOF ¶¶ 11–14.)

## II. Standard of Review

### a. **Summary Judgment**

A court may grant summary judgment if the pleadings and supporting documents,

---

[7] "The Credit Reporting Resource Guide defines ECOA 'Code 2' as indicating the account is a 'joint contractual liability' of the consumer and another individual." (Doc. 53 at 5.) Other ECOA Codes include: "Code 1" describing an "Individual" relationship between the consumer and the account, meaning "[t]his consumer has contractual responsibility for this account and is primarily responsible for its payment"; "Code 3" describing an "Authorized User," meaning "[t]his consumer is an authorized user of this account; another consumer has contractual responsibility"; "Code 4" describing a "Co-maker or Guarantor," meaning "[t]his consumer is the co-maker or guarantor for this account, who becomes liable if the maker defaults"; and "Code 7" describing a "Maker," meaning "[t]his consumer is the maker who is liable for the account but a co-maker or guarantor is liable if the maker defaults." (*Id.* at 13.)

[8] On August 29, 2022, Chase denied Plaintiff's request for a credit line increase citing "charge off(s) or bad debt collection(s)" as the basis for its refusal. (PSOF ¶ 12; Doc. 48 at 483–84.) Likewise, on September 26, 2022, USAA denied Plaintiff's application for a credit card, citing Plaintiff's Experian consumer report and reasons including "derogatory public record or collection filed." (PSOF ¶ 13; Doc. 48 at 487.) Plaintiff asserts these denials were because of the GBR collections account listed on Experian consumer report. (PSOF ¶¶ 11–14.) Navy Federal approved Plaintiff for a loan in August 2022 and a credit increase in September 2022. (*Id.* ¶ 15.) Plaintiff asserts Navy Federal Credit Union did not place a "hard inquiry" to Experian for Plaintiff's consumer report in August 2022 (*Id.*), however, it appears Navy Federal Credit Union conducted a hard inquiry to Experian on September 5, 2022 (Doc. 48 at 245).

viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue is genuine when the disputed fact "could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

In the cross-summary judgment evaluation, the court must "review each motion . . . separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 167 (2017). In addition, the court may consider either party's evidence in the opposing party's motion when deciding whether to grant either summary judgment motion. *See Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir. 2001).

Even though the court may evaluate either party's evidence, evidence must be admissible to be considered. *Moran v. Selig*, 447 F.3d 748, 759–60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (court may strike inadmissible declarations and other evidence). Furthermore, a party cannot create a genuine issue of material fact by making barren assertions in its legal memoranda. *See Varig Airlines v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (1982).

### b. **FCRA**

Congress enacted the FCRA to promote "fair and accurate credit reporting" by "requir[ing] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. §§ 1681(a)(1)–(b).

A consumer reporting agency can be liable for failing to "follow reasonable

procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "In such lawsuits, before a court considers the reasonableness of the agency's procedures, the consumer must make a 'prima facie showing' of the inaccuracy in the agency's reporting." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018)). Likewise, "a Plaintiff filing suit under section 1681i must make a 'prima facie showing of inaccurate reporting.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008)). "[I]f there is no inaccuracy, then the reasonableness of the investigation is not in play." *Gross*, 33 F.4th at 1251.

"On the flip side, if there is an inaccuracy, to succeed, the plaintiff must establish that the investigation was unreasonable." *Id.* "The FCRA does not impose strict liability, however—an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). "The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Id.* However, a reinvestigation claim under the FTCA is not a proper vehicle for collaterally attacking the legal validity of a debt. *Carvalho*, 629 F.3d at 891.

**III. Discussion**

    **a. Defendant's Motion for Summary Judgment**

Experian moves for summary judgment on all claims because (1) Plaintiff cannot meet her threshold burden of establishing that Experian prepared a report containing inaccurate information; (2) Plaintiff's dispute was an improper collateral attack on the GBR debt; (3) Plaintiff cannot show Experian failed to maintain reasonable procedures or to conduct a reasonable reinvestigation; and (4) Plaintiff cannot show Experian acted willfully. (Doc. 45 at 7, 10–20.)

To establish a prima facie case under Section 1681e or Section 1681i, Plaintiff must prove that Experian published inaccurate information. *Carvalho*, 629 F.3d at 890. A

consumer report is "inaccurate" if the report is "patently incorrect or materially misleading." *Id.* at 890–91. Information is "materially misleading" when it is reported "in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw*, 891 F.3d at 756 (citation omitted). However, "information is only materially misleading when it is open to an interpretation that is directly contradictory to the true information." *Sanchez v. JPMorgan Chase Bank NA*, 643 F. Supp. 3d 1025, 1033 (D. Ariz. 2022) (internal quotations omitted). In evaluating information's accuracy, the court must view the report as a whole and assess the entire tradeline to determine the accuracy of any piece of information. *See id.* at 1033–34.

Here, Plaintiff fails to establish a prima facie case because she cannot show that Experian's reporting was inaccurate as a matter of law. Notably, Plaintiff "does not argue that it was inaccurate to describe her as having some liability for her husband's account with [Southern]." (Doc. 62 at 4.) Instead, she argues that "Experian's reporting was inaccurate because it would lead a reasonable user to believe that Plaintiff had made a contract with [Southern] and had breached it." (*Id.*) Plaintiff asserts that because she never signed Mr. Lovelady's contract with Southern or consented to being a "joint account holder," she did not meet Experian's "joint account holder" definition as "a primary borrower who signs 'as a co-borrower or cosigner' on a credit application."[9] (*Id.* at 8–9.) Plaintiff further argues that Experian's reporting was inaccurate because she was not—and could not be—"personally liable" for the community debt until after the debt was properly adjudicated under A.R.S. § 25-215(D), which it had not been.[10] Lastly, Plaintiff argues Experian's reporting is also materially misleading to potential creditors because a creditor could not access her "separate property" to pay the community debt. (*See* Doc. 47 at 10.)

Plaintiff's arguments are unpersuasive. Under Arizona law, Plaintiff does not need to be a party to the contract to be jointly liable for Mr. Lovelady's debt. Arizona law

---

[9] Plaintiff cites "Ben Luthi, *Authorized user vs. Joint Account Holder: What's the difference?* Experian (2021), https://www.experian.com/blogs/ask-experian/authorized-user-vs-joint-account-holder-whats-the-difference/#s3 (last visited May 19, 2024)," which appears to be a blog post discussing two ways to share a credit card with another person. (Doc. 47 at 8–9.)

[10] Plaintiff did not brief this argument and raised it for the first time at oral argument.

- 7 -

establishes that "[d]uring marriage, either spouse may contract a debt for the benefit of the community . . . ." *Samaritan Health Sys. v. Caldwell*, 957 P.2d 1373, 1375 (Ariz. Ct. App. 1998) (citing Arizona Revised Statute ("A.R.S.") § 25-215(D)); *see also In re Rollinson*, 322 B.R. 879, 883 (D. Ariz. 2005) ("[O]ne spouse can unilaterally obligate the community under Arizona law."). The relevant Arizona statute states:

> Except as prohibited in § 25-214, either spouse may contract debts and otherwise act for the benefit of the community. In an action on such a debt or obligation the spouses shall be sued jointly and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation.

A.R.S. § 25-215(D). "[N]ecessary medical care provided to a spouse is presumed to be 'intended to benefit the community, which is the test of whether an obligation is a community debt.'" *Caldwell*, 957 P.2d at 1376 (citing *Phx. Baptist Hosp. & Med. Ctr. v. Aiken*, 877 P.2d 1005, 1008 (Ariz. Ct. App. 1994)). "[C]ommunity debts remain the joint obligation of both parties, and a creditor can look to either spouse for satisfaction of the entire debt." *Id.* As such, Plaintiff is jointly liable for the community debt Mr. Lovelady incurred when he received dental care at Southern.[11] *Schlaefer*, 996 P.2d at 748 ("[A]ll debts incurred during marriage are presumed to be community obligations unless there is clear and convincing evidence to the contrary.").

Similarly, neither Arizona statute nor case law support Plaintiff's claim that she cannot be held "personally liable" for the community debt until after the debt is adjudicated under A.R.S. § 25-215(D). To the contrary, under Arizona law, the nature of a debt as a community obligation starts when the debt is incurred. *See Schlaefer*, 996 P.2d at 749–50 (quoting *Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1009 (Ariz. Ct. App. 1995))

---

[11] "[P]arties may enter into a premarital agreement [to] prospectively abrogate their respective rights to community property." *Elia v. Pifer*, 977 P.2d 796, 805 (Ariz. Ct. App. 1998); A.R.S. §§ 25-203(A)(1), (8); *see also Schlaefer v. Fin. Mgmt. Serv., Inc.*, 996 P.2d 745, 748 (Ariz. Ct. App. 2000) ("Nothing in [§ 25-203] prohibits such parties from agreeing to keep their property *and their debts* separate during marriage."). Here, however, Plaintiff and Mr. Lovelady did not enter into a premarital agreement to keep their debts separate during marriage. (ESOF ¶ 5; DCL at 139:8–10.)

- 8 -

("The court's allocation of a community debt does not change its nature or limit the right of a creditor to seek satisfaction from either spouse; it only determines the rights and obligations of the spouses '*with respect to each other*.'"). Moreover, Plaintiff's claim that she is not liable for the community debt until after it is adjudicated under Arizona law is a legal argument not cognizable under the FCRA. *See Carvalho*, 629 F.3d at 892 (plaintiff's argument that the collections account for her medical debt was inaccurately reported because her insurer "wrongfully refused to pay" the debt was an improper collateral attack on the legal validity of the debt).

Finally, as to Plaintiff's claim that Experian's reporting is materially misleading, the question of "which property a creditor could satisfy the debt from" (i.e., community or separate) does not change that Plaintiff is jointly liable for the entire debt. As such, even if a creditor interpreted the "joint account" notation to mean Plaintiff personally incurred the debt, this interpretation would not be materially misleading to render the reporting actionable. *See Shaw*, 891 F.3d at 758 ("[E]ven if code combination 9-68 could stand for other derogatory events and thereby be 'misleading,' that alone would not render Experian's reporting actionable. The reporting must be 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'").[12] As CRAs serve an economic purpose, excluding the community debt from Plaintiff's consumer report would fail to put creditors on notice of her obligations. *Gutierrez v. Gutierrez*, 972 P.2d 676, 679 (Ariz. App. 1st Div. 1998) (the presumption that debt incurred during marriage is community debt is "primarily intended for the benefit of creditors"). Additionally, "[t]he FCRA does not require that accurate negative information be removed from credit reports merely because the consumer disagrees with the language used." *Potter v. Chex Sys., Inc.*, 128 F. Supp. 3d 1276, 1279 (S.D. Cal. 2015) (CRA's failure to remove from consumer's credit report notation that consumer engaged in "account abuse" did not

---

[12] Indeed, when asked at oral argument, Plaintiff could not identify an ECOA code that more accurately reflects Plaintiff's admitted responsibility for the debt other than the industry-standard Code 2 for "joint contractual liability." As Experian's counsel explained, the ECOA codes are not developed by Experian and are industry-standard codes specified in the Credit Reporting Resource Guide and used by all CRAs.

amount to reporting inaccurate information, even when the bank furnishing the information did not use that language).

For these reasons, Experian's reporting was neither patently incorrect nor materially misleading. Even viewing the facts in the light most favorable to Plaintiff, Plaintiff cannot succeed on her FCRA claims because she fails to establish inaccuracy, which is the first element of her prima facie case. The Court will grant Experian's motion and need not address Experian's remaining arguments for summary judgment.

### b. **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff seeks summary judgment on the sole issue of "accuracy." (Doc. 47 at 5–6, 12.) For the reasons already discussed, Plaintiff fails to show that the information Experian reported was inaccurate, patently incorrect, or materially misleading. As such, Plaintiff is not entitled to summary judgment on the issue of accuracy as a matter of law. *See Celotex Corp.*, 477 U.S. at 322–23. The Court will deny Plaintiff's motion.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Crystal Lovelady's Motion for Partial Summary Judgment is **DENIED**. (Doc. 47.)

**IT IS FURTHER ORDERED** that Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment is **GRANTED**. (Doc. 45.) The Clerk of Court shall enter judgement in favor of Defendant Experian, docket accordingly, term any pending motions, and close the file in this case.

Dated this 25th day of March, 2025.

Honorable Angela M. Martinez
United States District Judge